## LOSS RESULTING FROM DELAY IN COMPLETING A STREET IMPROVEMENT CONTRACT.

Court of Appeals for Hamilton County.

J. A. EBERHARDT v. BOARD OF COMMISSIONERS OF HAMILTON COUNTY, OHIO.*

Decided, July 30, 1913.

*Contracts—Delay in the Work of Improving a Street—Caused by Conditions of which the Contractor had Knowledge—Claim for Damages Incident to the Delay Denied.*

Where it appears from the provisions of a contract for a street improvement that the contractor was advised the running of electric cars thereon was not to be interfered with, and that the tracks were to be readjusted by the railway company, and the right was reserved to suspend the work at any time for the purpose of reconstructing said tracks and no claim for damages was to be made by reason thereof, he will not after final completion of the work be allowed damages because of protracted delay in the readjustment of the tracks which made it necessary to do the work under unfavorable and more expensive conditions.

*Joseph W. O'Hara, Gideon C. Wilson* and *Joseph Wilby,* for plaintiff in error.

*Pogue, Campbell & Groom* and *Ireton & Schoenle,* contra.

The disallowance by the court below of the claim of the plaintiff in error for extras, under his contract for paving Carthage pike with granite, is affirmed.

JONES (O. B.), J.; SWING, J., and JONES (E. H.), J., concur.

The case below arose upon an appeal made to the court of common pleas by J. A. Eberhardt from the action of the county commissioners of Hamilton county, rejecting his claim for damages growing out of a contract between him and the county commissioners for the improvement of Carthage pike through the villages of Carthage, Elmwood and St. Bernard in said county.

*Affirmed without opinion, *Eberhardt* v. *County Commissioners*, 90 Ohio State.

The contract provided for the grading and paving of said pike with granite blocks. In the center of said roadway were double street car tracks which plaintiff claimed said commissioners failed to have removed so that he could proceed to make such improvement without interference therefrom. The record shows that at the time the work was commenced there was some controversy between the street railway company operating on said tracks and the village of Carthage with regard to the operation of said street railway and the right of the company to maintain such tracks to operate in the manner it was then doing, and because of this controversy no arrangement was made by said street railway company at the time the paving was commenced by the contractor for the relaying and readjustment of said tracks, but the paving was laid between the curb and the end of the ties on either side of said tracks before any paving was done in the center. Plaintiff in error contended that this method of operation was not contemplated by the parties at the time the contract was made, and that it had entailed heavy additional expense upon him by reason of being compelled to work in narrower quarters which prevented adoption of the usual method employed in such construction work. The basis of his entire claim is practically the additional expense claimed to be caused by the complications arising out of relaying the street car tracks.

The case below was tried before a referee appointed to take and report the testimony and his findings of fact and law. An extended trial was had, and the testimony and exhibits, with the report of the referee, are embodied in the bill of exceptions consisting of eight bound volumes of type-writing. The report of the referee was adverse to the claim, and the court below entered a decree overruling the exceptions of Eberhardt to the report of the referee, and confirming the report dismissing the appeal. A motion for a new trial was filed by Eberhardt, which was overruled by the court. To reverse that judgment and decree the error proceedings are brought in this court.

The specifications under which the work was done provided, in Section 1, that:

"Each party will examine the location of the work and judge for himself as to all of the circumstances affecting it. No in-

formation derived from official or other sources will release the contractor from fulfilling all of the conditions of the contract.''

And the contractor admitted that he had looked over the ground and knew of the existence of the street railway tracks, and knew of the provisions which were embodied in the contract in Sections 35 and 13, which are respectively as follows:

35. ''Street Railway Tracks. Where the roadway is to be occupied by street railway tracks, they will be readjusted, renewed and placed in position by the railway company, to the lines and levels given by the enigneer, and all expenses pertaining to the laying of the street railway tracks shall be paid for by the railway company * * * but all work within the rails of said tracks, such as paving with granite and foundation, shall be done by the contractor for the street improvement as contemplated in these specifications.

''Where, in the opinion of the chief engineer of the board of county commissioners it is not necessary to renew the track stringers or cross-ties of the street railway tracks, the said tracks shall be adjusted as required of the specifications, and the subgrade of foundations be thoroughly compacted by the contractor with rammers at all points inaccessible to the roller, and without disturbing the tracks. * * * Where electric railway tracks are laid prior to the pavement, the contractor will be required to construct street, including the laying of pavement, without interrupting the running of electric cars. The contractor will also be required to pave between and alongside all street railway rails that are or may be laid of whatever pattern, cutting the blocks to fit the level of said rail without additional compensation to that bid for paving.''

13. ''The right to construct or reconstruct any electric railway * * * at any time prior to the completion of the road covering over the line of the same, is expressly reserved by the board of county commissioners, and the contractor shall not be entitled to any damages by reason thereof, and said board of county commissioners reserve the right of suspending the work on any part of said street for the purpose above stated without compensation to the contractor for said suspension, but shall extend a corresponding time for completion of said work.''

It is clear, therefore, that the contractor was advised that the running of the electric cars was not to be interrupted by his work, and that the street railway tracks were to be adjusted by

the railway company, and that the commissioners reserved the right to suspend work on any part of said street at any time for the purpose of constructing or re-constructing such electric railway, and that no claim for damages by reason thereof should be claimed. And under Section 5 of the specifications the right to change the method of construction in any particular was reserved to the engineer, subject to approval by the commissioners, and the contractor agreed not to claim damages on account thereof.

The record fails to show any interference by the commissioners on behalf of the county with the work of the contractor, that was not permissible under the terms of the contract, or that would in any way entitle the contractor to a claim for damages other than the extra amounts that were allowed him in the payments already made for the work. The contractor at the outset was met with the proposition that the car tracks would not be immediately readjusted in Carthage, where the work was begun, and he proceeded with the work under this condition. And this condition continued up to the time that he himself obtained from the traction company a contract for readjustment and relaying of said street car tracks, which was on October 27th, 1903. Any claim, therefore, that he might properly make an account of the interference of the street railway tracks would be limited to the period before the time when he became responsible for the work of relaying said tracks.

The work of construction extended over a much greater period of time than that fixed by the contract, and it is apparent from the record that the work during the first part of the entire period was more expeditiously and cheaply done than that during the latter part of the period, and it is shown by the testimony of one of the witnesses—an engineer named Innes, called by the county and not disputed—that the cost of the part of the work in Carthage where the interference of the street railroad tracks existed was cheaper than the corresponding work at the southern part of the improvement where no such interference existed.

The court is of the opinion that the plaintiff failed to prove any damages caused by any act or failure to act on the part of

the county commissioners or under the terms of their contract. A careful examination of the record fails to disclose any error in the proceedings below prejudicial to the plaintiff in error.

Judgment of the court below is therefore affirmed.